FILED _____ ENTERED
_____ LODGED _____ RECEIVED

SEP 1 1 2000

AT ____
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
                                    DEPUTY
BY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STANLEY AXEL, et al.,          :
                               :
v.                             :  Civil Action WMN-97-1614
                               :
KENNETH S. APFEL               :

## MEMORANDUM

Before the Court is Defendant's Motion for Summary Judgment

(Paper No. 42).[1]  Plaintiffs have opposed the motion and

---

[1]Also before the Court is Defendant's unopposed motion to
strike (Paper No. 53).  Defendant asserts that Plaintiffs'
exhibits 9A and 9B, the reports of Frederick Derrick, Ph.D.,
must be stricken due to Plaintiffs' failure to properly designate
Dr. Derrick as an expert by the April 28, 1998, deadline
specified in the scheduling order (Paper No. 21) for Plaintiffs'
Rule 26(a)(2) disclosures regarding experts.  Assuming, arguendo,
that this deadline was extended with the general discovery
deadline to December 30, 1999, Plaintiffs also failed to meet the
later deadline as Rule 26(a)(2) requires disclosure not only of
the identity of the expert but also of all opinions to be
expressed, basis of opinions, information considered in forming
opinions, exhibits to be used, and qualifications of and
compensation to expert.  Plaintiffs did not provide the
additional required information.  Thus, under Fed. R. Civ. P.
37(c)(1), "[a] party that without substantial justification fails
to disclose information required by Rule 26(a) . . . shall not,
unless such failure is harmless, be permitted to use as evidence
at trial, at a hearing, or on a motion any witness or information
not so disclosed."  Here the failure is not "harmless" as Fed. R.
Civ. P. 26(b)(4) precludes Defendant from deposing Dr. Derrick
until after his report is provided.  This, in turn, has prevented
Defendant from securing its own expert because he was unaware of
the nature of Dr. Derrick's testimony, as it applies to this
case, until Defendant received Plaintiff's opposition to their
motion for summary judgment.  Therefore, because Plaintiffs
failed to adhere to the deadline for submission of expert

1



Defendant has replied.  Upon a review of the pleadings and the

applicable case law, the Court determines that no hearing is

necessary (Local Rule 105.6) and that Defendant's motion will be

granted.

## I.   BACKGROUND

Plaintiffs Stanley Axel, Joel Canfield, John R. Love, Joseph

P. Murphy, John W. Owen, Jr., and William T. Sheridan bring this

action under the Age Discrimination Employment Act ("ADEA") and

Title VII of the Civil Rights Act claiming that Defendant

employer and his predecessors "have covertly engaged in policies

and practices on a continual basis which have willfully,

intentionally, and unlawfully discriminated against Plaintiffs

and other men on the basis of their age and sex," Complaint at 6,

in violation of the ADEA and Title VII of the Civil Rights Act,

respectively.  More specifically, Plaintiffs claim they were

prevented from being promoted beyond the GS-12 grade and that

Defendant promoted younger "female employees to higher level

positions beyond grade GS-12 to the disadvantage of older, over

the age of forty (40), more experienced male employees."

Complaint at 6.  Plaintiffs were all employees of the Social

---

testimony and because such failure is not harmless, Defendant's
motion to strike will be granted.

2

Security Administration ("SSA") at the time of the alleged

discrimination and each has previously filed an individual

administrative complaint regarding the alleged discrimination.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is

appropriate where "there is no genuine issue as to any material

fact and . . . the moving party is entitled to summary judgment

as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986). For purposes of summary judgment, a dispute

about a fact is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party,"

and a fact is material if, when applied to the substantive law,

it affects the outcome of litigation.  Id.

A party seeking summary judgment bears the initial

responsibility of informing the court of the basis of its motion

and identifying the portions of the opposing party's case which

it believes demonstrate the absence of a genuine issue of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).  The non-moving party is entitled to have "all reasonable

inferences . . . drawn in its respective favor."  Felty v.

Graves-Humphreys Co., 818 F.2d 1126, 1129 (4ᵗʰ Cir. 1987).

If the movant demonstrates there is no genuine issue of

3

material fact and that she is entitled to summary judgment as a
matter of law, the non-moving party must, in order to withstand
the motion for summary judgment, produce sufficient evidence in
the form of depositions, affidavits or other documentation which
demonstrates that a triable issue of fact exists for trial.
Celotex, 477 U.S. at 324.  Unsupported speculation is
insufficient to defeat a motion for summary judgment.  Felty, 818
F.2d at 1128 (citing Ash v. United Parcel Serv., Inc., 800 F.2d
409, 411-12 (4th Cir. 1986)).  Additionally, the existence of
only a "scintilla of evidence" is not enough to defeat a motion
for summary judgment.  Instead, the evidentiary materials must
show facts from which the finder of fact could reasonably find
for the non-moving party.  Anderson, 477 U.S. at 252.  At the
summary judgment phase, it is not appropriate for the court to
make credibility determinations, weigh the evidence, or draw
inferences from the facts which are adverse to the nonmoving
party; these are jury functions.  Id.

## III. DISCUSSION

Under Title VII it is an unlawful employment practice for an
employer "to fail or refuse to hire or to discharge any
individual, or otherwise to discriminate against any individual
with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2. Likewise, the ADEA requires that all personnel actions affecting employees of the Federal Government who are at least 40 years of age be "made free from any discrimination based on age." 29 U.S.C. §633a.

There are two primary theories under which employment discrimination claims are brought: disparate treatment and disparate impact.[2] In many cases, especially where subjective or discretionary employment practices are at issue, such practices may be analyzed under both approaches. See, e.g., Mozee v. American Commercial Marine Serv. Co., 940 F.2d 1036, 1039 (7th Cir. 1991), cert. denied, 506 U.S. 872 (1992); Grant v. Bethlehem Steel Corp., 635 F.2d 1007, 1013 (2nd Cir. 1980), cert. denied, 452 U.S. 940 (1981).

In order to establish a disparate treatment claim under either Title VII or the ADEA,[3] plaintiff bears the burden of showing that he was discriminated against based on the proscribed

---

[2]Also referred to as adverse impact.

[3]In Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2105 (2000), the Court assumed, arguendo, that the McDonnell Douglas framework is fully applicable to ADEA discrimination claims.

5

classification, Karpel v. Inova Health Sys. Servs., 134 F.3d
1222, 1227 (4ᵗʰ Cir. 1998), and that such discrimination was
intentional. Hazen Paper Co. v. Biggins, 507 U.S. 604, 610
(1993), cert. denied, 513 U.S. 1013 (1994). Such a claim can be
established by either direct evidence, or by using the burden
shifting scheme set forth in McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973) and its progeny. Here plaintiff has
presented no direct evidence of discrimination. The necessary
proof to indirectly establish a claim of disparate treatment
consists of three steps: (1) the plaintiff must establish a prima
facie case of discrimination by a preponderance of the evidence,
Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4ᵗʰ Cir.
1997); (2) the burden then shifts to the defendant who must
articulate a legitimate, nondiscriminatory reason for the adverse
employment action, Texas Dep't of Community Affairs v. Burdine,
450 U.S. 248, 254 (1981); and (3) the burden shifts back to the
plaintiff to demonstrate that the reason offered by the employer
is false or pretextual and that the real reason for the action
was unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 515 (1993). The "[u]ltimate burden of persuading the
trier of fact that the defendant intentionally discriminated
against the plaintiff remains at all times with the plaintiff."

6

Burdine, 450 U.S. at 253.

Applying the McDonnell Douglas analytical framework and
Fourth Circuit case law, for Plaintiffs to establish a prima
facie case of sex or age discrimination in the failure to promote
context, each plaintiff must prove that: (1) he was member of
protected group; (2) he applied for position in question; (3) he
was qualified for position; and (4) he was rejected in favor of
someone not a member of protected group under circumstances
giving rise to inference of unlawful discrimination.  See
McDonnell Douglas, 411 U.S. at 802; Carter v. Ball, 33 F.3d 450,
458 (4th Cir. 1994); Alvarado v. Board of Trustees of Montgomery
Community College, 928 F.2d 118, 121 (4th Cir. 1991).

"[T]he necessary premise of the disparate impact approach is
that some employment practices, adopted without a deliberately
discriminatory motive, may in operation be functionally
equivalent to intentional discrimination."  Watson v. Fort Worth
Bank & Trust, 487 U.S. 977, 987 (1988).  The required proof to
establish a claim of disparate impact consists of three steps:
(1) the plaintiff must make a prima facie case of discrimination,
see McDonnell Douglas, 411 U.S. at 802; (2) the burden then
shifts to the defendant to prove the practice in question is job
related and is consistent with business necessity, Griggs v. Duke

7

Power Co., 401 U.S. 424, 431 (1971); and (3) the plaintiff must
then show that there is another, less discriminatory, means
available to the defendant.  Albemarle Paper Co. v. Moody, 422
U.S. 405, 425 (1975).

For plaintiffs to establish a prima facie case of sex or age
discrimination, they must be able to: (1) isolate and identify
the specific employment practice that selects applicants in a
pattern significantly different from the overall pool of
applicants; and (2) show causation by offering "statistical
evidence of a kind and degree sufficient to show that the
practice in question has caused the exclusion of applicants for
jobs or promotions because of their membership in a protected
group."  Watson, 487 U.S. at 994.  See also Walls v. City of
Petersburg, 895 F.2d 188 (4th Cir. 1990) (finding that plaintiff
failed to meet burden of proof because she did not "offer any
connection between [the] statistics and any personnel decisions
by the city").  In proving causation, mere speculation is not
enough.  Id.

Under either theory, Plaintiff must allege a tangible
adverse employment action as a result of the alleged
discrimination.  St. Mary's Honor Ctr., 509 U.S. at 523-24.
Adverse employment actions must consist of "ultimate employment

8

decisions such as hiring, granting leave, discharging, promoting, and compensating." Page v. Bolger, 645 F. 2d 227, 233 (4th Cir. 1981), cert. denied, 452 U.S. 92 (1982). Lesser "interlocutory or mediate decisions" do not rise to the level of an actionable adverse employment practice. Id. See Elkins v. Pharmacy Corporation of American, 217 F.3d 838, 2000 WL 962669, *2 (4th Cir. 2000)(Supervisors "actions in arranging meetings on short notice, keeping Elkins waiting before meetings with her, taking telephone calls during meetings with Elkins, and failing to inform her when meetings were canceled or rescheduled" were "de minimus" complaints and did not amount to ultimate employment decisions); Johnson v. Danzig, 213 F.3d 631, 2000 WL 458887, *2 (4th Cir. 2000) ("letters of reprimand and admonishment and the denial of training are not actionable adverse employment actions"); Francis v. Board of School Com'rs., 32 F.Supp.2d 316, 320 n.3 (D. Md. 1999) (reassignment of Francis to her "original department, with her original title and at her original salary, albeit with slightly reduced supervisory duties," itself not enough to constitute an adverse employment action); Ward v. Johns Hopkins University, 861 F.Supp. 367, 377 (D. Md. 1994)(supervisor not speaking to plaintiff and giving her less favorable assignments not adverse employment actions); Raley v. Board of

9

St. Mary's County Com'rs., 752 F.Supp. 1272, 1278 (D. Md. 1990)
(touching and verbal sexual comments not employment decisions).

## A.  Harassment and Denial of Choice Claims

Two of Plaintiff Axel's complaints clearly fail to qualify
as adverse employment actions.  First is Axel's contention that
he was discriminated against by management's refusal to let
fellow employee Maurice R. duBois represent him in his EEO
claims.  Defendant claims that because duBois previously held a
management position there would be the appearance of a conflict
interest if he were permitted to represent Axel.  Axel Dep. at
245.  Axel could not refute this contention as he admitted that,
although duBois did not have "major supervisory duties," he did
have some.  Axel Dep. at 246.  The validity of the contention,
however, is irrelevant as the decision does not rise to the level
of "ultimate employment decision" as construed by the Fourth
Circuit and this Court as it had no impact on the hiring,
granting leave, discharging, promoting, or compensating of Axel.
Therefore, the grant of summary judgment in favor of Defendant is
appropriate.

Likewise, summary judgment is also appropriate as to Axel's
claim that he was adversely affected by his supervisor's
unannounced attendance at a single work group meeting.  According

10

to Axel this "showed [his co-workers] that [he] was being supervised and watched and monitored by [his] branch chief, and in an uncalled-for fashion." Axel Dep. at 198. Again, regardless of the effect perceived by Axel, the mere 15 minute presence of his supervisor at a single work group meeting cannot be deemed an adverse employment action.

## B. "E" Performance Evaluation Claims

Each Plaintiff, except Love, asserts that he should have received a higher "Outstanding" ("O") rating on the performance evaluations in question. Plaintiffs contend that their performance evaluations were "lowered for the purpose of keeping them from being considered for promotion to the GS-13-15 grade band." Opp. at 22. Additionally, Plaintiffs claim that the Agency manipulated the "rating system to cover up its invidious advancement of females over older males." Opp. at 38.

According to Defendant, Plaintiffs fail to establish a prima facie case of discrimination under the disparate treatment approach because "performance evaluations standing alone do not constitute adverse employment action." Motion at 11. The problem with this argument is that, while other circuits have supported this view, see Smart v. Ball State University, 89 F.3d 437, 441 (7th Cir. 1996); Meredith v. Beech Aircraft Corp., 18

11

F.3d 890, 896 (10ᵗʰ Cir. 1994), the Fourth Circuit has not.[4]

Plaintiffs Sheridan, Canfield, Murphy and Owen face a second hurdle in establishing a prima facie case of discrimination in that they have provided no evidence which would give rise to an inference of unlawful discrimination. These Plaintiffs have merely provided their unsupported contention that their individual evaluation rating should have been higher. See Murphy Dep. at 47 (stating "I just felt overall that I was being under-evaluated); Owen Dep. at 42 (Owen "believed" he deserved an outstanding rating). Plaintiffs have provided no evidence as to the ratings received by all other members of their work unit for the periods in question. And, they have acknowledged that the "E" evaluations in question are in-line with previous and/or subsequent evaluations - evaluations which are not challenged. See Sheridan Dep. at 48 (admitting he has never received "O" rating[5]); Canfield Dep. at 40 (conceding that "E" rating

---

[4]Defendant cites Hetzel v. County of Prince William, 89 F.3d 169 (4ᵗʰ Cir. 1996), cert. denied, 519 U.S. 1028 (1996), in support of its contention. Unfortunately Hetzel does not make clear whether no adverse employment action was found because the action was outside the statute of limitations or if no adverse employment action was found because the action did not deprive Hetzel of a valuable government benefit. Id. at 171.

[5] Even if Sheridan could establish a prima facie case, Defendant has provided various nondiscriminatory reasons in

12

consistent with prior and subsequent ratings); Owen Dep. at 41,
47-8 (acknowledging that he received only one "O" rating in
period from 1982 to 1999); Murphy Dep. 48 (stating that from 1982
to retirement in 1997 he never received "O" rating on any
evaluation and that he did receive evaluations with a less than
"E" rating).  Under the facts surrounding these particular
evaluations there is no inference of discrimination.  Plaintiffs
Sheridan, Canfield, Murphy and Owen have failed to establish a
prima facie case of discrimination.  Therefore, summary judgment
in favor of Defendant is required.

Assuming, arguendo, that Plaintiff Axel is able to meet his
initial burden, grant of summary judgment is still appropriate as
Defendant has offered legitimate, nondiscriminatory reasons for
the "E" evaluation rating and Plaintiff has failed to offer
sufficient proof that reasons are false or pretextual.  Axel
claims that he should have received an "O" rating on his 1993
evaluation.  He does not, however, provide any evidence or reason
as to why he deserved a higher rating.  Conversely, his

---

support of the "E" rating given to Sheridan.  See J. Carey Aff.
at 1 (supervisor stating that Sheridan received "E" rating
because work assignments turned in late, Sheridan had lighter
workload than those who received "O" ratings, and Sheridan has
insufficient written work to warrant "O" rating).

13

supervisor, Rosemary Carey, lists a number of reasons as to why Axel's performance did not warrant the highest "O" rating. These include: Axel needed "direction and supervision in terms of completeness and approach" of work; his written assignments were often returned to be reworked; and his work products needed input from his supervisors. R. Carey Aff. at 1-2. Carey went on to say that if Axel's "products were presented routinely with no corrections or additions needed, his performance would have been rated Outstanding." Id. Axel cannot claim that these reasons are false or pretextual as he admitted that he knew about the problem with his writing and that there may have been other justifications for the "E" rating. Axel Dep. at 112. None of the statistical evidence is relevant as it does not address the distribution of evaluation ratings to other members of Axel's work group. Additionally, the mere existence of an Affirmative Employment Program plan ("AEP") is insufficient to prove discriminatory intent as there has been no proof that the actions of Ms. Carey were motivated by the plan. See Brinkely v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999) (there must be a "nexus between [the] negative attitude and the employment action"); Brown v. McLean, 159 F.3d 898, 904 (4th Cir. 1998), cert. denied, 526 U.S. 1099 (1999)(citing Cerrato v. San

14

Francisco Community College Dist., 26 F.3d 968, 976 (9ᵗʰ Cir. 1994))("Evidence of the existence of an affirmative action plan is generally relevant as proof of intentional discrimination 'only if [the employer's adverse] actions were taken pursuant to the plan.'").

The absence of proof of reliance on the AEP is also why Plaintiff's allegations fail under a disparate impact theory.  To prove a prima facie case, Plaintiffs must show an actual connection between the specific employment practice, here the AEP, and the discrimination.  Mere speculation is not enough. Instead, Plaintiff must offer "statistical evidence of a kind and degree sufficient to show that the practice in question has caused" the discrimination.  Watson, 487 U.S. at 944.  Plaintiffs have failed to prove this connection as they offer no evidence that the existence of the AEP influenced any of the ratings they received.

## C.  Non-Selection Claims

1.  Disparate Treatment

Each Plaintiff, except Sheridan, alleges he was discriminated against on the basis of age and gender by virtue of his non-selection to various job postings.  Two of these claims are general "no promotion" claims by Plaintiffs Owen and Canfield

15

for the periods covering 1982-1992 and 1969-1994, respectively.
Summary judgment must be granted on these claims as Plaintiffs
are unable to establish a prima facie case for two reasons:
first, their failure to show that they applied for a position
and, second, their failure to provide evidence that a person
outside the protected group received the promotion.  Likewise,
Canfield's claim regarding H-1564[6] fails in that Canfield is
unable to state who the selectee was for that position.

Summary judgment is also appropriate for each of Plaintiff
Axel's five claims for non-selection: Q-76, Q-104, Q-117, U-195
and U-202.  For Q-76, Q-104, and Q-117, Axel did not make the
Best Qualified List ("BQL"), which is a prerequisite of applying
for the position.  Therefore, he fails to establish a prima facie
case as he is unable to show either that he applied for the
position or that he was qualified for the position.  Regarding U-
202, Axel is unable to meet the fourth prong of a prima facie
case: that he was rejected in favor of someone not a member of
the protected group under circumstances giving rise to an
inference to unlawful discrimination.  In this instance two of
the three selectees were male.  Thus there are no circumstances

---

[6]All job vacancies receive a letter-number designation.

16

giving rise to an inference of discrimination.

Lastly is Axel's claim regarding U-195.  The problem with this claim is that Axel did not meet the requirement that he initiate contact with the EEO counselor within 45-days of the employment decision.  29 C.F.R. §1614.105(a)(1)(1995).  Plaintiff argues that the 45-day limitations period did not begin to run until he was formally notified of the selection.  This view, however, is directly contradicted by the Fourth Circuit in Jakubiak v. Perry, 101 F.3d 23 (4th Cir. 1996).  In Jakubiak the Fourth Circuit held that when a personnel decision is at issue, the 45-day clock runs from "effective date of action," id. at 27, not the date the aggrieved party is formally notified.  The same effective date would trigger the 45-day limitations period in the case of an ongoing pattern of discrimination because, in such a case, the deadlines run from the time of the discriminatory act.  Young v. National Ctr. for Health Servs. Research, 828 F.2d 235, 237 (4th Cir. 1987), vac. on other grounds, 498 U.S. 1019 (1991).  In this case, the act was the final selection of another employee for the position in question.  An additional obstacle to Axel advancing a pattern and practice claim is that "individuals do not have a private, non-class cause of action for pattern or practice discrimination under . . .

17

Title VII."  Lowery v. Circuit City Stores, Inc., 158 F.3d 742,
759 (4th Cir. 1998), vac. on other grounds, 119 S.Ct. 2388
(1999).

The following non-selections remain: Owen U-175, Love Q-177,
and Canfield H-1663.  In each case, it is assumed that Plaintiffs
have successfully established a prima facie case of
discrimination.[7]  Summary judgment, however, remains appropriate
as Defendant has advanced legitimate nondiscriminatory reasons
for each non-selection and Plaintiffs fail to demonstrate that
those reasons are false or pretextual.  The only reason given by
Plaintiffs in support of their discrimination claims is that
because they have more years of service than any of the selected
females, they are more "qualified."  See Williams v. Cerberonics,
Inc., 871 F.2d 452, 456 (4th Cir. 1989)("a plaintiff's own
assertions of discrimination in and of themselves are
insufficient to counter substantial evidence of legitimate
nondiscriminatory reasons").

In regards to U-175, Defendant states that Judy Sobus was
selected over Plaintiff Owen because she had been satisfactorily
performing the job for about 1½ years.  Defendant further

---

[7] This is doubtful as to the ADEA claim as no evidence has
been presented as to all of the selectees ages.

maintains that they wanted to avoid having to train someone new
for the position as they did not want to endure the learning
curve period that would accompany a new employee.  Conversely,
Owen boldly asserts that he should have been promoted because he
had more experience, in terms of overall years, at SSA.  Thus, he
claims that he was discriminated against because Sobus received
the same number of points for experience as he did - even though
he has worked for SSA a much longer time.  This, however, is not
evidence of either age or sex discrimination as the practice
affects both men and women as well as the old and young equally.[8]
Owen is unable to provide any other reason as to why he is more
qualified for the position.  Additionally, he has failed to
provide any evidence of either direct or indirect discriminatory
intent on the part of the person making the selection.  Owen's
speculation that he was a more suitable employee is not enough.
See Lowery, 158 F.3d at 763.  Likewise, the mere existence of an
AEP is insufficient to show that the AEP motivated the selection
of Sobus.  See id. at 761; Bostron v. Apfel, 104 F.Supp.2d 548,
555 (D. Md. 2000)(Plaintiff must provide evidence that selecting

_____

[8] For example, if someone had worked for SSA eight years but
was only 25 years of age they would receive the same number of
points as someone with only 2 years of service but who was 55
years of age.

"officials relied on the AEPs in making the promotional decisions").

Similar circumstances exist regarding the selection of Joan Cvach (nee Costello) over Love to fill Q-117. As with Sobus, Cvach was already performing, albeit temporarily, the duties of the position. No evidence was offered indicating that the selecting supervisor, Crank, discriminates against men in any of his selections generally or in this selection in particular. The fact that Crank gave Love "outstanding" performance evaluations as well as that he wrote several memos complimenting Love's work, Love Aff. at 4, does not mean that Love was more qualified for this particular position.[9] Love can offer only one reason for why he was more qualified: that he had more years of service than Cvach. Love Dep. at 62-74. As previously stated, the method with which SSA allocates points for length of service is not a discriminatory practice. As additional evidence, Love cites the existence of the AEP plan. Again, this is insufficient evidence absent proof that the AEP was relied upon by Crank in his selection of Cvach.

---

[9]Plaintiffs must prove that they were more qualified than the person selected. If the parties are of equal qualifications then the "employer has discretion to choose among equally qualified candidates." Burdine, 450 U.S. at 259.

20

Canfield also alleges discrimination in his non-selection
for H-1663. In this case, two women were selected to fill the
positions. The selecting supervisor, Anderson, stated that the
women were selected because they best satisfied the criteria for
the position[10] and both were, and had been, working directly in
the same areas as the vacancies. Anderson Aff. at 1. In
contrast, Canfield worked in a different branch and had little
direct knowledge about either area. Instead, Canfield felt that
he deserved the position merely because he had more overall
experience. Canfield Dep. at 71-72. As with Plaintiffs Owen and
Love, Canfields bold assertions regarding his suitability are
irrelevant, see Lowery, 158 F.3d at 763, as is the mere existence
of the AEP plan.[11] See Brown v. McLean, 159 F.3d 898, 904 (4th
Cir. 1998), cert. denied, 526 U.S. 1099 (1999)(citing Cerrato v.
San Francisco Community College Dist., 26 F.3d 968, 976 (9th Cir.

_____

[10]Anderson's criteria included "analytical experience in
developing and evaluating policies, standards, guides or
procedures." He also considered whether the applicants
experience was in "the nonexertional impairment area" and the
recency of any experience in that area. Lastly, he "considered
the candidates' performance appraisals, training and self
development, and awards." Anderson Aff. at 1.

[11]In Anderson's affidavit, he specifies that he had "always
been instructed to evaluate and consider employees based upon
their work and not to consider any discriminatory activities,
such as, race, sex, age." Anderson Aff. at 1.

21

1994) (existence of AEP relevant "only if [the employer's adverse] actions were taken pursuant to the plan").

2. Disparate Impact

Plaintiffs also fail under the disparate impact approach as they are unable to establish a prima facie case of discrimination. Plaintiffs' initial responsibility is to identify and isolate the specific offending employment practice. Watson, 487 U.S. at 994. Plaintiffs must then prove an actual connection between the identified practice and the alleged discrimination. Walls, 895 F.2d at 191.

Based on the pleadings, it is uncertain as to whether the offending employment practice is the AEP or the method of assigning points for experience. Plaintiffs' designation of the specific practice is, however, of no importance as Plaintiffs are unable to establish a prima facie case under either practice.

If the offending practice is the existence of the AEP, Plaintiffs have two obstacles. First, the age discrimination claim must fail because the AEP only addresses gender and racial issues. Second, a claim for gender discrimination cannot be supported as Plaintiffs are unable to establish causation. Plaintiffs have not provided any evidence demonstrating that the "selecting official relied on the AEP's in making the promotional

22

decisions challenged by plaintiffs." Bostron, 104 F.Supp. at 555. The mere existence of an AEP is insufficient to prove discrimination.

Assuming the offending practice is, instead, the method of assigning points, Plaintiffs also fail. As this practice affects both sexes and all ages equally,[12] it cannot be classified as a discriminatory practice. Additionally, it is pure speculation on the part of Plaintiffs to assume that receiving more experience points would have resulted in their selection for the vacancies in question. A selecting official has discretion to choose any person on the BQL. There is no evidence to indicate that there would have been a different choice merely because the Plaintiff had a slightly higher point total. Absent supporting proof, mere speculation alone is insufficient to establish causation. Watson, 487 U.S. at 994; Walls, 895 F.2d at 191.

As Plaintiffs have failed to establish a prima facie case of discrimination under the disparate impact theory, summary judgment in favor of Defendants is appropriate.

## IV. CONCLUSION

---

[12] As previously stated, a young male with eight years of experience would receive the same number of points for experience as a 55 year old female with two years of service.

23

For the foregoing reasons, Defendant's Motion for Summary

Judgment will be granted.  A separate order will issue.

William M. Nickerson
United States District Judge

Dated: September **11**, 2000